UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
SHUSONG LIN on his own behalf and on
behalf of others similarly situated,

                        Plaintiff,

          -against-                       **MEMORANDUM & ORDER**
                                           20-CV-2746 (WFK) (TAM)
JD PRODUCE MASPETH LLC, JD
TRUCKING MASPETH INC., SHENG BO
DONG, YI FENG YE, and JESSICA
DONG,

                       Defendants.
-----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

        On June 20, 2020, Plaintiff Shusong Lin ("Plaintiff") initiated this action on behalf

of himself and others similarly situated against Defendants JD Produce Maspeth LLC

("JD Produce"), JD Trucking Maspeth Inc. ("JD Trucking"), Sheng Bo Dong, Yi Feng Ye,

and Jessica Dong (collectively "Defendants"). (*See* Complaint ("Compl."), ECF No. 1.)

Plaintiff seeks damages for unpaid wages pursuant to the Fair Labor Standards Act, 29

U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, Art. 6 § 190 *et seq.* and Art.

19 § 650 *et seq.* ("NYLL").

        Currently pending before this Court is Plaintiff's second motion for conditional

certification as a collective action under the FLSA (*see* Pl.'s Second Mot., ECF No. 42;

Pl.'s Decl. in Supp. of Second Mot. ("Pl.'s Decl."), ECF No. 43; Pl.'s Mem. in Supp. of

Second Mot. ("Pl.'s Mem."), ECF No. 44; Pl.'s Reply in Supp. of Second Mot. ("Pl.'s

Reply"), ECF No. 64), which Defendants oppose (*see* Defs.' Mem. in Opp'n to Pl.'s

Second Mot. ("Defs.' Mem."), ECF No. 61; Defs.' Decl. in Opp'n to Pl.'s Second Mot.

("Defs.' Decl."), ECF No. 62). Also pending are Plaintiff's motions for an extension of

time to complete discovery and a motion to compel, which Defendants also oppose. (*See* Pl.'s Disc. Mot., ECF No. 63; Defs.' Reply in Opp'n to Pl.'s Disc. Mot., ECF No. 65; Pl.'s Mot. to Compel, ECF No. 66; Defs.' Reply in Opp'n to Pl.'s Mot. to Compel, ECF No. 67.)

For the reasons that follow, Plaintiff's motions are GRANTED in part and DENIED in part.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court assumes general familiarity with the case, the procedural history, and the underlying allegations in the Complaint.

### I.    Plaintiff's First Motion for Conditional Certification & Judge Gold's Denial

On October 15, 2020, Plaintiff moved for an order to conditionally certify this case as a collective action on behalf of all current and former non-exempt and non-managerial employees employed by Defendants from June 20, 2017 to the present. (*See* Pl.'s Mot. to Certify FLSA Collective Action, ECF No. 28; *see also* ECF Nos. 29, 30.) Defendants opposed the motion (*see* Defs.' Mem. in Opp'n to Pl.'s Mot. to Certify, ECF No. 32; *see also* ECF Nos. 33, 34, 35, 36, 37), and on January 2, 2021, the Honorable Steven M. Gold denied it (*see* Jan. 2, 2021 Order, ECF No. 39).

Specifically, Judge Gold concluded that Plaintiff had "failed to make even the modest factual showing required for conditional certification as a collective action." (Jan. 2, 2021 Order, ECF No. 39, at 11.) As an initial matter, Judge Gold denied the motion as to JD Trucking because he found that Plaintiff did not "purport to have any personal knowledge about the relationship between JD Trucking and JD Produce, and []

---

[1] It is well settled that a magistrate judge has authority to decide a motion for certification of a collective action. *See, e.g., Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651 (MKB) (SJB), 2021 WL 3087568, at *1 n.4 (E.D.N.Y. July 21, 2021); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010).

offer[ed] no basis for inferring that these two businesses are managed in the same way." (*Id.* at 8; *see also id.* at 9 ("[T]he Court has no basis to infer that the pay practices complained of by [P]laintiff were followed by JD Trucking.").) Next, Judge Gold found that given Plaintiff's assertion "that he worked longer hours than any of his fellow drivers" but received a lower weekly wage, Plaintiff's own affidavit suggested "the other [JD Produce] drivers were not working under circumstances similar to those that [P]laintiff complains about here." (*Id.* at 10.) Judge Gold further noted that Plaintiff did not make any allegations as to how much the dispatcher and loaders were paid or how their wages were calculated, but only that "these individuals worked the same schedule as he did, from 5:30 a.m. to 1:30 p.m. or longer, with no breaks, and did so six days per week." (*Id.*)

In addition, Judge Gold concluded that Plaintiff did not "adequately explain how he acquired his knowledge of the facts . . . in his affidavit." (*Id.*; *see also id.* at 11 ("In short, [P]laintiff's affidavit—the sole factual basis on which [P]laintiff relies in support of his motion—stands uncorroborated by any documents or testimony of any other JD Produce employee."); Aff. of Shusong Lin ("Lin Aff."), attached as Ex. 4 to Pl.'s Decl. in Supp. of Mot. to Certify, ECF No. 29-4.) On the question of Plaintiff's basis for knowledge, Judge Gold observed:

> [P]laintiff does not refer to any specific conversations or the circumstances under which they took place, stating only that he "befriended some coworkers, observed and talked with them about work," and learned that some were subjected to the same practices and policies that [P]laintiff faced regarding [D]efendants' failure to pay overtime and minimum wages. And, as to the loaders, [P]laintiff does not state whether he conversed with them or, if he did, how they communicated, despite referring to the loaders not by name but only as "[t]he Spanish-speaking loaders" and acknowledging that his native language is Chinese and that his affidavit was translated into Mandarin for him.

(*Id.* at 10–11 (quoting Lin Aff., ECF No. 29-4, ¶¶ 22, 60, 66).) In denying Plaintiff's

motion, Judge Gold was silent as to whether Plaintiff's motion was denied with or

without prejudice, and whether Plaintiff could seek leave to renew his motion following

additional discovery.

## II.   Plaintiff's Second Motion for Conditional Certification Under the FLSA

On June 28, 2021, nearly six months after Judge Gold's denial, Plaintiff again

moved for an order to conditionally certify this case as a collective action on behalf of all

current and former non-exempt and non-managerial employees employed by

Defendants from June 20, 2017 to the present. (Pl.'s Second Mot. to Certify FLSA

Collective Action ("Pl.'s Second Mot."), ECF No. 42.) This time, in addition to Plaintiff's

affidavit (*see* Aff. of Shusong Lin ("Second Lin Aff."), attached as Ex. 4 to Pl.'s Decl.,

ECF No. 43-4), Plaintiff included an affidavit from another former employee of

Defendants: Jian Qi (*see* Aff. of Jian Qi ("Qi Aff."), attached as Ex. 5 to Pl.'s Decl., ECF

No. 43-5).[2] On June 30, 2021, the parties appeared before the Honorable Robert M. Levy,

and he ordered briefing on whether Plaintiff could file a successive motion for

conditional collective certification after Judge Gold previously denied the first motion,

and without Plaintiff having first appealed that decision or moved for reconsideration.

(*See* June 30, 2021 ECF Minute Entry; *see also* ECF Nos. 45, 46, 47, 50, 51, 52, 53.) After a

motion hearing on August 17, 2021 before the undersigned Magistrate Judge (*see* Aug.

17, 2021 ECF Minute Entry), the Court granted Plaintiff's motion for leave to file a

---

[2] As discussed briefly during the August 17, 2021 Motion Hearing, Jian Qi is also the named Plaintiff in a related case initiated in this district on June 7, 2021, and similarly styled as a collective action under the FLSA. *See Qi v. JD Produce Maspeth LLC et al.*, 21-CV-3211 (WFK) (TAM) (E.D.N.Y. 2021). (*See also* Tr. of Aug. 17, 2021 Hearing, ECF No. 60, at 3.) In that case, Defendants have moved to stay the action and to compel arbitration. (*See* Aug. 17, 2021 ECF Order, 21-CV-3211.)

second § 216(b) motion, and directed the parties to complete briefing on the second motion to certify (*see* Aug. 20, 2021 Order, ECF No. 59).

<u>Jian Qi Affidavit and Paystubs</u>

In his affidavit, Mr. Qi states that he worked as a salesperson and occasional truck driver for JD Produce and JD Trucking from on or about February 2, 2019, until November 1, 2020, when he was fired. (Qi Aff., ECF No. 43-5, ¶¶ 3–5, 40, 64.) He claims he "drove the company truck at least (10) to fifteen (15) times in average a year to deliver goods." (*Id.* ¶ 6.) Mr. Qi avers that his "regular work schedule ran from 4:30 or 5:00 to 14:00 without any break for seven to seven and [a] half (7-.7.5) hours a day for six (6) days and forty-five (45) hours a week." (*Id.* ¶ 7.)[3] Mr. Qi also asserts he was "paid a flat compensation at a rate of approximately" $1,500 per week, that he received paychecks from both JD Produce and JD Trucking, and that he did not receive overtime pay, information regarding his hourly pay rate, or proper wage statements. (*Id.* ¶¶ 10, 12–19.) Along with Mr. Qi's affidavit, Plaintiff submitted paystubs showing that Mr. Qi received compensation from both JD Produce and JD Trucking. (*See generally* Jian Qi Redacted Paystubs ("Qi Paystubs"), ECF No. 56.)[4]

---

[3] Mr. Qi's affidavit does not specify whether this was his work schedule both as a salesperson and as a driver. In addition, in the related case in which Mr. Qi is the named Plaintiff, the Complaint alleges that between May 1, 2020, and November 1, 2020, Mr. Qi worked an average of approximately fifty-five hours per week. (Complaint in 21-CV-3211, attached as Ex. A to Defs.' Decl., ECF No. 62-1, ¶ 45.) As will be explained below, at this stage of the litigation, the Court does not resolve such factual discrepancies, which go to the ultimate merits of the case. *See Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010).

[4] After initially filing Mr. Qi's unredacted paystubs which included personally identifying information (*see* Aug. 12, 2021 ECF Minute Entry), Plaintiff refiled Mr. Qi's redacted exhibits following the August 17, 2021 Motion Hearing (*see* Qi Paystubs, ECF Nos. 56, 58). Additionally, during the hearing, Plaintiff's counsel represented that there was a dispute as to the accuracy of the amounts reflected in these paystubs. (Tr. of Aug. 17, 2021 Hearing, ECF No. 60, at 20:8–21:12.) As noted above and will be explained below, these sorts of factual disputes are beyond the scope of the instant motion.

In relation to Defendants' other employees, Mr. Qi's affidavit states that he "befriended some coworkers, observed and talked with them about work," and that he knows some of them "also suffered [the] same or similar practice and policy of Defendants and were also not paid overtime pay and minimum wages for all the hours worked more than forty (40) hours per week." (Qi Aff., ECF No. 43-5, ¶ 20.) Such coworkers include: "two (2) salesperson[s,] six to eight (6-8) drivers, [] 5-6 Spanish-speaking loaders, and 3 Chinese warehouse workers at any one time at JD Produce." (*Id.* ¶ 21.)

For the two salespeople, Ah Xiong and Guo, Mr. Qi attests they had the same schedule as him, i.e., forty-two hours a week, which he knows because they "were working together at all times," and because he saw their starting and end time every work day. (*Id.* ¶¶ 22–25, 27–30.) Mr. Qi also states that he believes they were paid at the same rate because they were in "the exactly same position, same work responsibilities, and according to the industry custom." (*Id.* ¶¶ 26, 31.) For the six truck drivers, Ah Hui, Ah Chen, Ah Mai, Lao Ning, Tony, and Xiao Guo,[5] Mr. Qi affirms that "[t]hroughout the course of employment, [he] was aware that all truck drivers were paid a[] weekly rate ranging from eight hundred dollars ($800) to one thousand dollars ($1,000), no matter how many hours they actually worked," i.e., forty-eight hours a week, and that the pay discrepancy "was due to the different types of truck[s] they dr[o]ve for doing delivery." (*Id.* ¶ 32.) Moreover, Mr. Qi claims he knows this information because he and the other truck drivers were paid on the same day, "normally on Monday every week, and these drivers told [him] their pay rate after [they] received [their] payment and [they] chatted with each other." (*Id.* ¶ 33; *see also id.* ¶¶ 39, 45, 51, 57, 63, 69.) Similarly,

---

[5] Aside from Xiao Guo, each of the other five drivers are also identified by Plaintiff Lin in his affidavit. (*See* Second Lin Aff., ECF No. 43-4, ¶¶ 28–54.)

Mr. Qi states he is familiar with these drivers' schedules because he "saw the drivers' work schedule while [he] was working at JD Produce's office." (*Id.* ¶¶ 37, 43, 49, 55, 61, 67.)

As for Lao Da Sun, the same dispatcher identified by Plaintiff Lin (*see* Second Lin Aff., ECF No. 43-4, ¶¶ 55–59), Mr. Qi does not make any claims as to dates of employment, wage calculations, or work responsibilities, but states that he worked fifty-one hours a week, which Mr. Qi knows because he was familiar with his schedule as they were "working together every workday," and because Mr. Qi "saw he began and finished while [they] were working together." (Qi Aff., ECF No. 43-5, ¶¶ 72–73.) Similarly, Mr. Qi does not make any claims as to the pay of the "Spanish-speaking loaders" who are "unknown to [him] by name because their turnover rate . . . [is] high," but attests they worked forty-eight hours a week, which he knows because he "saw their work schedule while [he] was working at JD Produce's office." (*Id.* ¶¶ 74–78.) Mr. Qi's affidavit does not make any specific claims or characterizations as to the aforementioned "Chinese warehouse workers." (*See id.* ¶ 21.)

## DISCUSSION

### I.   Legal Standard

Section 216(b) of the FLSA provides employees with a right of action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). To determine whether a worker should be permitted to bring a "collective action" under the FLSA, courts in the Second Circuit apply a two-step analysis for certification. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010); *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 316 (E.D.N.Y. 2016). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has

occurred." *Myers*, 624 F.3d at 555. If the Court finds at the first step that "the putative class is sufficiently similarly situated, the action will be conditionally certified and each class member may then consent in writing to 'opt-in' to the litigation." *Agonath v. Interstate Home Loans Ctr., Inc.*, No. 17-CV-5267 (JS) (SIL), 2019 WL 1060627, at *2 (E.D.N.Y. Mar. 6, 2019) (citing 29 U.S.C. § 216(b)). The second step, sometimes called the "decertification stage," involves determining "whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs," and is made with the benefit of a fuller record. *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 118 (E.D.N.Y. 2020); *see also Myers*, 624 F.3d at 555.

"The instant motion concerns only the first step: whether the proposed opt-in members are 'similarly situated' such that conditional certification should be granted." *Zaldivar*, 166 F. Supp. 3d at 317. Satisfying the first prong for conditional certification requires that the plaintiff "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also id.* ("[T]he purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." (emphasis in original)); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of this inquiry . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated."). At this first stage, district courts examine pleadings and affidavits, but "do[] not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010). In addition, while the "modest factual showing" is deemed "a low standard of proof," it cannot be satisfied by

8

"unsupported assertions." *Myers*, 624 F.3d at 555; *see also Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651 (MKB) (SJB), 2021 WL 3087568, at *3 (E.D.N.Y. July 21, 2021); *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 479 (S.D.N.Y. 2016). For example, a plaintiff seeking certification must offer "concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions." *Mata v. Foodbridge LLC*, No. 14-CV-8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015).

Furthermore, "[w]here, as here, a conditional certification motion is made after some, but not all, discovery has occurred, it remains an open question whether some kind of 'intermediate scrutiny' should apply." *Korenblum*, 195 F. Supp. 3d at 480–81; *see also Jibowu*, 492 F. Supp. 3d at 119; *Gaston v. Valley Nat'l Bancorp*, No. 17-CV-1886 (FB) (SMG), 2018 WL 4158407, at *2 (E.D.N.Y. Aug. 30, 2018) (describing the "'modest-plus' standard as a 'sliding scale,' with progressively more scrutiny applied as more evidence enters the record"). *But see Chowdhury v. Duane Reade, Inc.*, No. 06-CV-2295 (GEL), 2007 WL 2873929, at *3 (S.D.N.Y. Oct. 2, 2007) (finding that "it would be inappropriate to make more than a 'preliminary determination' at this time, or to require plaintiff to meet a more stringent standard than that typically applied at the early stages of litigation"). As the court in *Jibowu* observed, "[t]his heightened standard is rooted in efficiency concerns, and a reviewing court should deny conditional certification if it determines that the solicitation of additional opt-ins through court-authorized notice would not promote efficient resolution of common issues." *Jibowu*, 492 F. Supp. 3d at 119 (internal quotation marks omitted). Given the length of time this case has been in discovery, and in light of the efficiency concerns described in *Jibowu*, the Court adopts a "'sliding scale' approach to the 'modest-plus' standard" in determining whether the

potential opt-in plaintiffs are "similarly situated" to Plaintiff. *Id.* at 120; *see also id.* at 120 n.34.[6]

## II.    Analysis

The primary question before the Court is whether Plaintiff's second motion to certify adequately addresses the defects Judge Gold found in Plaintiff's first motion. Plaintiff's second motion is virtually identical to his first, save for inclusion of the additional affidavit of Jian Qi (*see* Qi Aff., ECF No. 43-5), as well as copies of some of Mr. Qi's paystubs (*see* Qi Paystubs, ECF No. 56). Accordingly, the narrower issue is whether Mr. Qi's additional information and support — which Plaintiff describes as "the keystone which cures the deficiencies identified by [Judge Gold]," (Pl.'s Reply, ECF No. 64, at 1) — is sufficient for a showing that Plaintiff, Mr. Qi, and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555.

For the reasons that follow, the Court finds Plaintiff has made a "modest factual showing" that he, Mr. Qi, and Defendants' truck drivers were similarly situated in terms of Defendants' alleged FLSA overtime violations. Accordingly, conditional certification is warranted as to this limited sub-group, subject to the Court's restrictions below.

---

[6] The Court notes, however, that even though the parties have had ample time to conduct discovery and fact discovery is technically closed (*see, e.g.*, Dec. 9, 2020 Status Report, ECF No. 38; Feb. 1, 2021 ECF Minute Entry; Mar. 3, 2021 Status Report, ECF No. 40), Plaintiff recently moved to reopen and extend discovery (*see* Pl.'s Disc. Mot., ECF No. 63) because "only 15 pages of Document Production response has been produced by Defendants," and depositions have not been completed (Pl.'s Reply, ECF No. 64, at 3; *see also* Aug. 12, 2021 ECF Minute Entry). Accordingly, although the Court adopts the "sliding scale" approach, the case has not reached the stage where Plaintiff should be held to a significantly more stringent standard. *Cf. Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787 (JCM), 2018 WL 1027161, at *3 (S.D.N.Y. Feb. 21, 2018).

A. <u>Conditional Certification</u>

Plaintiff argues that he and Mr. Qi "can make a substantial showing that themsel[]ves and all similarly-situated non-exempt employees[] employed by Defendants were all subject to a common policy or plan that violated the FLSA," namely, Defendants "not paying (i) the promised wage for all hours worked outside of regularly scheduled work hours; [or] (ii) overtime for all hours worked over 40." (Pl.'s Mem., ECF No. 44, at 10.) On this basis, Plaintiff seeks the conditional certification of a putative class consisting of: "Current and former non-exempt employees employed at any time from June 20, 2017 to the present by: (1) JD PRODUCE MASPETH LLC, located at 57-45 Rust St., Maspeth, NY 11378[; and] (2) JD TRUCKING MASPETH INC., located at 39-18 216th St., Bayside, NY 11361." (Pl.'s Notice of Pendency ("Notice of Pendency"), attached as Ex. 2 to Pl.'s Decl., ECF No. 43-2; *see also* Pl.'s Decl., ECF No. 43, ¶ 2; Pl.'s Second Mot., ECF No. 42.) Defendants argue that Plaintiff has once again failed to meet the modest factual showing necessary for conditional certification, and that Mr. Qi was both properly compensated and differently situated than Plaintiff. (*See* Defs.' Mem., ECF No. 61, at 4–7.)

Having reviewed the Complaint, the record, and Plaintiff's renewed motion, which includes Mr. Qi's affidavit and paystubs, the Court finds Plaintiff has made a "modest factual showing" sufficient to grant conditional certification of a collective as to Mr. Qi and Defendants' drivers, but not all current and former non-exempt employees.[7] *See, e.g.*, *Ni v. Red Tiger Dumpling House Inc*, No. 19-CV-3269 (GRB) (AKT), 2020 WL 7078533, at *6 (E.D.N.Y. Nov. 30, 2020) ("[T]he Court determines that Plaintiffs

---

[7] The Court conditionally certifies this limited collective only as to the claim for failure to pay overtime pursuant to the FLSA, as alleged in Plaintiff's Complaint. (*See* Compl., ECF No. 1, ¶¶ 57, 72–79.) *Cf. Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091 (SJF) (AKT), 2020 WL 3618892, at *6 n.6 (E.D.N.Y. July 2, 2020).

have failed to meet their burden with respect to '*all* non-exempt employees' of Defendants." (emphasis added)); *see also Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17-CV-273 (LAP), 2018 WL 1737726, at *4 (S.D.N.Y. Mar. 26, 2018) ("Plaintiffs have not made the requisite factual showing to certify a broader class beyond deliverymen."); *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322 (SJ) (MDG), 2014 WL 1515877, at *4 (E.D.N.Y. Apr. 17, 2014) ("Absent further explanation or information from plaintiffs, this Court cannot find that all of these employees are similarly situated to plaintiff[].")

i. *Unlawful Policy*

As an initial matter, the Court finds that Plaintiff has attested to facts sufficient to show that he and Mr. Qi were subject to an unlawful overtime policy in violation of the FLSA. Plaintiff states he worked sixty hours per week but was paid a flat weekly rate of $775. (Second Lin Aff., ECF No. 43-4, ¶¶ 8, 11.) Mr. Qi claims he worked forty-five hours a week but was paid a flat weekly rate of $1,500. (Qi Aff., ECF No. 43-5, ¶¶ 7–10.) In this preliminary context, the Court finds these facts sufficient to allege a policy by which Plaintiff did not receive overtime compensation, in violation of the FLSA. *See Han v. Shang Noodle House, Inc.*, No. 20-CV-2266 (PKC) (VMS), 2021 WL 3774186, at *9 (E.D.N.Y. Aug. 24, 2021) ("[T]o the extent Plaintiff alleges that Defendants paid him a flat monthly salary but did not pay him one-and-a-half times his regular rate for each hour worked in excess of 40 in a week, Plaintiff sufficiently alleges that he suffered a violation of federal overtime wage law."); *Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091 (SJF) (AKT), 2020 WL 3618892, at *7 (E.D.N.Y. July 2, 2020) (finding that an affidavit averring that plaintiff consistently worked more than 40 hours per week for defendants but "was paid a fixed salary . . . that did not properly compensate her for overtime hours" was sufficient to "allege that Plaintiff was subject to a policy or plan

12

which violated the FLSA"); *Jing Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642 (WFK) (SLT), 2016 WL 11263668, at \*5 (E.D.N.Y. Nov. 23, 2016) ("Here, for purposes of conditional certification only, Plaintiffs established an 'unlawful policy' whereby Defendants violated the FLSA . . . ."), *report and recommendation adopted*, No. 15-CV-3642 (WFK) (SLT), 2017 WL 1216571 (E.D.N.Y. Mar. 30, 2017). "Further, based on this information, the Court 'may infer' that other [similarly situated employees] 'worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA.'" *Ni*, 2020 WL 7078533, at \*6 (quoting *Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17-CV-7066 (DF), 2019 WL 699179, at \*6 (S.D.N.Y. Feb. 5, 2019)).

### ii.   *Single Enterprise*

In his denial of Plaintiff's first motion, Judge Gold concluded that the record lacked a sufficient basis to infer that JD Produce and JD Trucking are managed in the same way with respect to the alleged wage and hour practices. (*See* Jan. 2, 2021 Order, ECF No. 39, at 8.) Plaintiff argues in the instant motion that "JD Produce and JD Trucking are joint employers" of Plaintiff and Mr. Qi, "and constitute a single integrated enterprise for FLSA purposes, because both entities . . . issued [Mr. Qi] paystubs and paychecks during his employment," even though Mr. Qi primarily worked at JD Produce's headquarters. (Pl.'s Mem., ECF No. 44, at 15; *see also* Compl., ECF No. 1, ¶ 28 (alleging that JD Produce and JD Trucking are "joint employers of Plaintiff and constitute an enterprise . . . and are co-owned by the same partners").)[8]

---

[8] "The Court understands Plaintiff[] to be arguing that Defendants should be treated as a single integrated enterprise that jointly employed Plaintiffs for FLSA purposes," as opposed to "a joint employer for FLSA purposes." *Taveras v. D & J Real Est. Mgmt. II, LLC*, 324 F.R.D. 39, 41 n.2 (S.D.N.Y. 2018) (distinguishing the analysis set forth in *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) and *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 71–72 (2d Cir. 2003)).

Defendants, on the other hand, contend that "Mr. Qi's attempt to commingle [the] two corporations failed." (Defs.' Mem., ECF No. 61, at 5.)

"In determining whether multiple defendants constitute a single employer under the FLSA, courts consider the following factors: (1) interrelations of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership and financial control." *Lamb v. Singh Hosp. Grp., Inc.*, No. 11-CV-6060 MKB, 2013 WL 5502844, at *4 (E.D.N.Y. Sept. 30, 2013) (internal quotation marks omitted). In addition, a determination as to whether a defendant can ultimately be found to be a plaintiff's employer is "'a fact-specific inquiry' that cannot be resolved at [the conditional certification] stage." *Contrera v. Langer*, 278 F. Supp. 3d 702, 714 (S.D.N.Y. 2017) (quoting *Li v. Ichiro Sushi, Inc.*, 14-CV-10242 (AJN), 2016 WL 1271068, at *6 (S.D.N.Y. Mar. 29, 2016)); *see also Tiro v. Pub. House Investments, LLC*, 288 F.R.D. 272, 279 (S.D.N.Y. 2012) ("Whether or not Defendants operated as a single enterprise is a complicated and fact-specific inquiry that is not properly determined at the class certification stage. . . . These issues must be litigated further, and cannot be decided at this time.").

Here, the Court finds that Mr. Qi's affidavit and paystubs showing payment from both entities are sufficient to support the allegation that JD Produce and JD Trucking are a single enterprise for the purposes of analyzing the sufficiency of Plaintiff's motion for conditional collective action certification. *See, e.g., Taveras v. D & J Real Est. Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018) (finding that, *inter alia*, plaintiffs being paid by more than one defendant suggested "interrelation of operations and common management" at the preliminary conditional certification stage); *see also Jing Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642 (WFK) (SLT), 2016 WL 11263668, at *7

14

(E.D.N.Y. Nov. 23, 2016), *report and recommendation adopted*, No. 15-CV-3642 (WFK)
(SLT), 2017 WL 1216571 (E.D.N.Y. Mar. 30, 2017).

In addition to the allegations in the Complaint regarding co-ownership and
control (*see* Compl., ECF No. 1, ¶¶ 16, 22, 25, 28), Mr. Qi's affidavit states that his
paychecks were issued alternatively by JD Produce and JD Trucking, and that he
"complained to the Defendants for an explanation" but never received one (Qi Aff., ECF
No. 43-5, ¶¶ 12–13; *see also* Qi Paystubs, ECF No. 56 (showing three paystubs issued by
JD Produce and seven paystubs issued by JD Trucking)).[9] While Plaintiff's allegations
concerning the precise relationship between JD Produce and JD Trucking remain
somewhat vague, Mr. Qi's attestations and paystubs imply a level of operational
interrelatedness, common management, and common financial control sufficient for the
conditional certification phase. *Cf. Contrera*, 278 F. Supp. 3d at 715 ("When there are
ambiguities in the papers seeking collective action status, the court must draw all
inferences in favor of the plaintiff at the preliminary certification stage.").

Whether JD Produce and JD Trucking are in fact a single enterprise for FLSA
purposes is beyond the scope of this inquiry. *See Lamb*, 2013 WL 5502844, at *4 ("These
issues of fact should be determined following discovery, at the second stage of FLSA
collective action certification, rather than at this preliminary stage."); *see also Summa*, 715
F. Supp. 2d at 385. Nevertheless, in light of Plaintiff's additional evidence, the Court
finds that at this stage of the litigation, there are "sufficient indicia of commonality and
centralized operations" to warrant a finding that JD Produce and JD Trucking are a
single integrated enterprise under the FLSA. *Marin v. Apple-Metro, Inc.*, No. 12-CV 5274

---

[9] In addition, there is close temporal proximity in the dates listed on the paystubs, with
the seven JD Trucking paystubs issued in April, June, July, and August 2020, and the three JD
Produce paystubs issued in September and October 2020. (*See* Qi Paystubs, ECF No. 56.)

(ENV) (CLP), 2014 WL 11035376, at *7 (E.D.N.Y. July 29, 2014), *report and recommendation adopted*, No. 12-CV-5274 (ENV) (CLP), 2014 WL 7271591 (E.D.N.Y. Dec. 18, 2014); *see also Contrera*, 278 F. Supp. 3d at 714.

         iii.  *Similarly Situated*

Next, Plaintiff argues that the record "amply demonstrates that other employees of JD Produce and JD Trucking (consisting solely of salespersons, drivers, dispatchers and loaders) 'worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA.'" (Pl.'s Mem., ECF No. 44, at 11 (quoting *Lianhua Weng*, 2018 WL 1737726, at *3).) As discussed above, Judge Gold previously held that Plaintiff "failed to make even the modest factual showing required for conditional certification as a collective action," in large part due to a lack of direct knowledge, specificity, and corroboration. (*See* Jan. 2, 2021 Order, ECF No. 39, at 11.) Based on this Court's independent review, and taking into consideration Mr. Qi's affidavit, the Court concludes that Plaintiff has provided sufficient information to find that Defendants' drivers worked similar shifts for comparable pay, as there is now satisfactory evidence to infer that they too appear to have been paid a flat rate regardless of hours worked, in possible contravention of the FLSA's overtime provisions. However, Plaintiff has failed to make the same showing for *all* non-managerial employees, such as salespeople, dispatchers, loaders, or warehouse workers.

"The factual nexus between Plaintiff's situation and that of the putative collective is the heart of the Court's analysis when determining whether to conditionally certify a collective action." *Ni*, 2020 WL 7078533, at *7; *see also Mata*, 2015 WL 3457293, at *2. As previously noted, neither Plaintiff nor Mr. Qi make any characterizations as to the wage calculation or work responsibilities of the warehouse workers, dispatcher, or unnamed loaders, but instead merely echo the conclusory assertion that these employees worked

more than forty hours a week. (*See* Second Lin Aff., ECF No. 43-4, ¶¶ 55–64; Qi Aff.,

ECF No. 43-5, ¶¶ 21, 70–76.) Without more, the Court cannot find these workers to be

similarly situated to Plaintiff. *See Elamrani v. Henry Limousine, Ltd.*, No. 15-CV-2050

(ERK) (MDG), 2016 WL 5477590, at *4 (E.D.N.Y. Sept. 28, 2016) ("Although plaintiff's

burden of proof is low, it is not non-existent — certification is not automatic." (internal

quotation marks omitted)); *see also Han*, 2021 WL 3774186, at *11; *Thompson*, 2021 WL

3087568, at *3; *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 451 (S.D.N.Y.

2013). Moreover, such unsupported assertions plainly do not cure the deficiencies

identified by Judge Gold. (*See* Jan. 2, 2021 Order, ECF No. 39, at 10–11); *see also Reyes v.

Nidaja, LLC*, No. 14-CV-9812, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015) ("[W]here a

plaintiff bases an assertion of a common policy on observations of coworkers or

conversations with them, he must provide a minimum level of detail regarding the

contents of those conversations or observations.").

 Likewise, Plaintiff has not met the low threshold at this stage for showing that

the two salespeople, Ah Xiong and Guo, are similarly situated relative to Defendants'

alleged FLSA overtime violations. Even if the Court credits Mr. Qi's claims that Ah

Xiong and Guo had the same schedule as he did based on the fact that they "were

working together at all times" and he saw their starting and end times, the Court cannot

rely on the unsupported assertion that Mr. Qi "believes they were paid at the same

rate" simply because they were "in the exactly same position, [with the] same work

responsibilities, and according to the industry custom." (Qi Aff., ECF No. 43-5, ¶¶ 22–

31.) Because Mr. Qi's affidavit lacks "any factual details regarding his knowledge about

the [salespersons] wage information," Plaintiff has not provided "sufficient factual

details to establish they are similarly situated victims of a common policy or plan to

deny overtime wages." *Ni*, 2020 WL 7078533, at *8; *see also Mata*, 2015 WL 3457293, at *3

(denying conditional certification where plaintiff failed to include "concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions"); *Ikikhueme v. CulinArt, Inc.*, No. 13-CV-293 (JMF), 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (finding plaintiff's "understanding" of other employees' situations to be "exactly the type of unsupported assertion that, according to the Second Circuit, cannot satisfy a plaintiff's burden at the preliminary certification stage" (internal quotation marks and alterations omitted) (citing *Myers*, 624 F.3d at 555)).

As for Defendants' truck drivers, Judge Gold previously concluded that Plaintiff's affirmation that he "became aware that [the] other drivers are also paid a flat rate . . . in excess of $800 a week," was alone insufficient for conditional certification. (Second Lin Aff., ECF No. 43-4, ¶ 24; Jan. 2, 2021 Order, ECF No. 39, at 10.) Mr. Qi's affidavit, however, names each of the same drivers and adds that "[t]hroughout the course of employment, [Mr. Qi] was aware that all truck drivers were paid at weekly rate ranging from eight hundred dollars ($800) to one thousand dollars ($1,000), no matter how many hours they actually worked," and that the pay discrepancy "was due to the different types of truck they drive for doing delivery." (Qi Aff., ECF No. 43-5, ¶ 32.) Mr. Qi claims he knows this information because drivers were paid on the same day as he was, "normally on Monday every week, and these drivers told [him] their pay rate after [they] received [their] payment and [they] chatted with each other." (*Id.* ¶ 33; *see also id.* ¶¶ 39, 45, 51, 57, 63, 69.) Furthermore, Mr. Qi attests that he "saw the drivers' work schedule while [he] was working at JD Produce's office." (*Id.* ¶¶ 37, 43, 49, 55, 61, 67.)

The Court finds that these additional allegations sufficiently establish a factual nexus between the respective situations of Plaintiff, the other drivers, and Mr. Qi, "such

that they are similarly situated 'victims of a common policy or plan that violated the law,'" as alleged in this motion. *Chui*, 2020 WL 3618892, at *7 (quoting *Neris v. R.J.D. Constr., Inc.*, No. 18-CV-1701 (ADS) (AKT), 2019 WL 1458239, at *5 (E.D.N.Y. Mar. 29, 2019)).[10] To the extent that Defendants argue Plaintiff is differently situated than the other drivers in terms of the range of hours worked and the slightly varied rate of pay (*see* Defs.' Mem., ECF No. 61, at 6–7), the Court notes that this "does not necessarily preclude a finding that he and other employees were similarly situated with respect to their compensation of overtime wages." *Ni*, 2020 WL 7078533, at *8 (explaining that "[u]nder the FLSA and NYLL a fixed salary [will not] be deemed to include an overtime component in the absence of an express agreement," and that "[t]here is a rebuttable presumption that a daily or weekly salary does not include an overtime premium for the hours worked in excess of forty hours per week" (internal quotation marks omitted)). Moreover, as discussed above, at this preliminary certification stage, "the court does not resolve factual disputes, decide ultimate issues on the merits or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007); *see also Han*, 2021 WL 3774186, at *7 ("At the preliminary stage of an

---

[10] The mere existence of an additional affidavit on Plaintiff's behalf is not what leads the Court to draw this conclusion. Indeed, many courts find a single affidavit to be sufficient at the conditional certification stage. *See, e.g., Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19-CV-7332 (PAE) (BCM), 2021 WL 148751, at *8 (S.D.N.Y. Jan. 15, 2021) ("It is not necessarily problematic that plaintiff submits a single affidavit, which in turn relies in part on 'hearsay allegations.'"), *aff'd sub nom. Ke v. JR Sushi 2 Inc.*, No. 19-CV-7332 (PAE) (BCM), 2021 WL 465359 (S.D.N.Y. Feb. 9, 2021); *Mata*, 2015 WL 3457293, at *3 ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit."). Rather, it is the inclusion of the requisite factual detail necessary to meet the low standard for conditional certification that allows Plaintiff to move forward with opt-in notices to similarly situated employees of Defendants. *See Neris*, 2019 WL 1458239, at *5 (granting motion for conditional certification where "Plaintiff's assertions [were] supported by information about how Plaintiff learned what he learned"); *cf. Jeong Woo Kim*, 985 F. Supp. 2d at 449 ("Although a second declaration is not necessary, the declarations of [plaintiff and another former employee], together, are more than sufficient to satisfy [plaintiff]'s minimal burden at the preliminary certification stage.").

FLSA collective certification, 'whether [the plaintiff] will eventually succeed on the merits of his FLSA claim is immaterial.'" (quoting *Jeong Woo Kim*, 985 F. Supp. 2d at 447).

For these reasons, the Court finds that Plaintiff has made the requisite "modest factual showing" necessary to be afforded the opportunity to send a notice to other drivers employed by Defendants so that they may choose to opt into the lawsuit.

B.  <u>Notice of Pendency</u>

"Once a court determines that a named plaintiff has demonstrated that he or she is similarly situated to other employees of the defendant with respect to the defendant's alleged unlawful policy . . . the court may proceed to authorize issuance of a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit." *Genxiang Zhang*, 2019 WL 699179, at *6; *see also Lynch*, 491 F. Supp. 2d at 367. Here, Plaintiff has proposed content for this notice (*see* Notice of Pendency, ECF No. 43-2; Pl.'s Proposed Publication Order ("Proposed Order"), attached as Ex. 3 to Pl.'s Decl., ECF No. 43-3), which the Court adopts in part pursuant to the modifications outlined below.

i.  *Scope of Collective Action & General Content of Notice*

Because the Court has limited the scope of the collective to drivers, the scope of Notice of Pendency shall be similarly narrowed as follows:

> Current and former non-exempt drivers employed at any time from June 20, 2017, to the present by: (1) JD PRODUCE MASPETH LLC, located at 57-45 Rust St., Maspeth, NY 11378; and (2) JD TRUCKING MASPETH INC., located at 39-18 216th St., Bayside, NY 11361.

In addition, Defendants raise several overarching objections to the contents of Plaintiff's proposed notice. For example, Defendants argue that the notice should not

20

include references to any minimum wage or NYLL violations. (Defs.' Mem., ECF No. 61, at 8.)[11]

The FLSA "vests the district court with broad discretion with respect to the notice of pending litigation to be provided to potential opt-in plaintiffs," and "[n]either the [FLSA] statute, nor the courts, specifically outline what form court-authorized notice should take, nor what provisions the notice should contain." *Yi Mei Ke*, 2021 WL 148751, at *12 (internal quotation marks omitted). Here, the Court agrees with Defendants that the notice should not state or imply that the collective covers alleged federal minimum wage or NYLL violations. (*See supra* note 7.) Accordingly, the language in the notice advising opt-in plaintiffs of their "right to participate in this lawsuit as a claimant and plaintiff under the Fair Labor Standards Act if [they] worked for Defendants time from June 20, 2017 to the present and were not paid minimum wage for all hours worked," must be removed, as must any similar suggestions that the collective covers minimum wage or NYLL violations. (Notice of Pendency, ECF No. 43-2, at 1–2.) However, to the extent that Plaintiff references his individual NYLL and alleged minimum wage violations in describing "the nature of the lawsuit filed and the relief being sought," he may do so. *See Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012).[12]

---

[11] In their opposition, Defendants cite to Plaintiff's original proposed Notice of Pendency submitted together with Plaintiff's first motion to certify, i.e., ECF No. 29-2. (*See, e.g.*, Defs.' Mem., ECF No. 61, at 8.) Based upon the Court's review, the proposed notices filed at ECF No. 29-2 and ECF No. 43-2 are essentially identical. Accordingly, the Court cites only to the latter document for the purposes of the instant analysis.

[12] Additionally, the Court notes that the word "district" is misspelled in the Notice of Pendency in several places in reference to the "Eastern District of New York." (*See, e.g.*, Notice of Pendency, ECF No. 43-2, at 3.)

ii. *Notice Period*

Next, Plaintiff requests to send the Notice of Pendency to those potential members of the collective employed by Defendants from June 20, 2017 — three years preceding the commencement of this action — to the present. (*See* Notice of Pendency, ECF No. 43-2; Proposed Order, ECF No. 43-3; Pl.'s Mem., ECF No. 44, at 23–24; Pl.'s Reply, ECF No. 64, at 9.) Defendants argue that "the notice period should be three years from the date of any order regarding conditional certification, rather than the date of the complaint as proposed." (Defs.' Mem., ECF No. 61, at 8.)

The statute of limitations under the FLSA is generally two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). At the first stage of conditional certification, "allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Agonath*, 2019 WL 1060627, at *4; *see also Valerio v. R.N.C. Indus., LLC*, 314 F.R.D. 61, 73–74 (E.D.N.Y. 2016) (collecting cases). In this case, Plaintiff repeatedly alleges willfulness in his Complaint. (*See* Compl., ECF No. 1, ¶¶ 1–2, 32, 34, 78–79.) Accordingly, a three-year statute of limitations is appropriate.

With respect to the calculation of this limitations period, Defendants are correct that "courts often begin counting back from the date of the conditional certification order since the statute of limitations on FLSA claims continues to run until a plaintiff consents to join the action." *Neris*, 2019 WL 1458239, at *6 (citing 29 U.S.C. § 256; *Ritz v. Mike Rory Corp.*, No. 12-CV-367 (JBW) (RML), 2013 WL 1799974, at *3 (E.D.N.Y. 2013)); *see also Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360 (RRM) (LB), 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012). "However, 'because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year

period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" *Valerio*, 314 F.R.D. at 74 (quoting *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)); *see also Yi Mei Ke*, 2021 WL 148751, at *14 ("In this Circuit, courts routinely calculate the notice period from the date on which the lawsuit was filed (not the date of conditional certification)[.]" (internal quotation marks omitted)).

Here, the Court concludes that "the remedial purposes of the FLSA are best served [] by applying the three-year statute of limitations from the date of the filing of the Complaint in this action." *Valerio*, 314 F.R.D. at 74 (internal quotation marks omitted)). This conclusion does not preclude Defendants from challenging the timeliness of individual opt-in plaintiffs' claims at a later date, if legally supported. *See id*. Accordingly, the Court directs that notice be provided to potential opt-in plaintiffs employed by Defendants since June 20, 2017.

### iii. *Opt-In Period*

Plaintiff contends that the opt-in period in this case should run for ninety days from the date of this Order. (*See* Pl.'s Mem., ECF No. 44, at 23–24; Pl.'s Reply, ECF No., at 64, at 9–10; Notice of Pendency, ECF No. 43-2.) Defendants argue that this period should be limited to sixty days. (Defs.' Mem., ECF No. 61, at 9.) In general, courts only allow a ninety-day opt-in period "where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Chui*, 2020 WL 3618892, at *10 (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 452 (S.D.N.Y. 2011)). In contrast, "[c]ourts often grant 60-day opt-in periods . . . where the record suggests that the proposed collective is modest in number." *Han*, 2021 WL 3774186, at

23

*13. Here, the record suggests that the proposed collective is relatively small, and Plaintiff has not presented special circumstances to justify extending the opt-in period.

Accordingly, the Notice of Pendency shall be modified to provide for sixty (60) days during which potential plaintiffs may opt in. *See id.* at *13; *Ni*, 2020 WL 7078533, at *10; *Chui*, 2020 WL 3618892, at *10.

iv.   *Equitable Tolling*

Plaintiff also requests that "the statute of limitation on this suit be tolled for 90 days until the expiration of the Opt-In Period" in order to account for "unnecessary delays." (Pl.'s Mem., ECF No. 44, at 25.) Defendants argue that Plaintiff "has not met his burden of showing the exceptional circumstances warranting the drastic remedy of equitable tolling." (Defs.' Mem., ECF No. 61, at 8.)

"Under the FLSA, the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Ni*, 2020 WL 7078533, at *10 (citing 29 U.S.C. § 256(b)). However, the Court "may toll the limitations period to avoid inequitable circumstances under the doctrine of equitable tolling." *Agonath*, 2019 WL 1060627, at *4 (internal quotation marks omitted). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Ni*, 2020 WL 7078533, at *10 (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003)); *see also Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 (SMG), 2011 WL 844963, at *1–2 (E.D.N.Y. Mar. 8, 2011).

Courts in this circuit have permitted equitable tolling while a plaintiff's motion for conditional certification is pending before the court through the expiration of the

24

opt-in period. *See, e.g.*, *Han*, 2021 WL 3774186, at *13; *cf. Ni*, 2020 WL 7078533, at *10; *Chui*, 2020 WL 3618892, at *10; *Yahraes*, 2011 WL 844963, at *2; *McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012). Here, given the length of time that has passed since the instant motion was filed and the relative diligence of Plaintiff's counsel in pursuing conditional certification, the limitations period will be tolled from June 28, 2021, the date Plaintiff made his second conditional certification motion, until sixty (60) days from the Court's final approval of the revised Notice of Pendency form. *See Han*, 2021 WL 3774186, at *13; *Ni*, 2020 WL 7078533, at *10; *McGlone*, 867 F. Supp. 2d at 445.

v. *Translation of Notice and Consent to Join Forms*

Plaintiff's requests as to the languages in which to circulate the notices in this case vary, with some papers suggesting that they be circulated in Chinese, Spanish, and English, and others mentioning Chinese and English. (*Compare* Pl.'s Mem., ECF No. 44, at 25 (requesting only Chinese and English), *with* Proposed Order, ECF No. 43-3, ¶ 8 (requesting Chinse, English, and Spanish).) Defendants do not oppose either request. In light of the FLSA's remedial purposes, and given the tendency to permit notice to be "translated into the mother tongue of non-English speaking groups of potential plaintiffs," the Court authorizes Plaintiff to circulate the Notice of Pendency in English, Chinese, and Spanish. *Valerio*, 314 F.R.D. at 76 (quoting *Colon v. Major Perry St. Corp.*, No. 12-CV-3788 (JPO), 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013)).

vi. *Choice of Counsel & Fee Arrangement in Notice*

Defendants contend that the proposed notice is "manipulative and misleading as to putative members' right to choose their own counsel," and that "Plaintiff's counsel should be required to provide precise information regarding their attorneys' fees or contingency fees." (Defs.' Mem., ECF No. 61, at 9–10.) Plaintiff argues in response that "[p]otential Plaintiffs are alerted they can get different representation as they choose,"

and that the proposed notice "meets the standard regarding final notice" with respect to the fee arrangement. (Pl.'s Reply, ECF No. 64, at 10.)

Here, the Court agrees with Plaintiff and finds the language concerning choice of counsel and Plaintiff's counsel's fee arrangement to be sufficiently clear for the present purposes. *See Han*, 2021 WL 3774186, at *13. The Notice of Pendency clearly indicates that potential plaintiffs have the right to hire their own attorney. Further, the notice makes plain that if opt-in plaintiffs choose to be represented by Plaintiff's counsel, "their costs and fees will be paid out of any settlement or money judgment Plaintiffs receive against Defendants," but that if no settlement is reached, Plaintiff's counsel "will not receive any fee" and they "will not be required to pay anything out of pocket for services provided." (Notice of Pendency, ECF No. 43-2, at 4.)

> vii.   *Distribution of the Notice of Pendency*

Plaintiff proposes to disseminate the Notice of Pendency through several methods, none of which Defendants appear to oppose. (*See* Pl.'s Mem., ECF No. 44, at 18–20 (requesting that the notice be distributed via "mail, email, social media chat, and text message, [and] two 'QR codes' (Quick Response codes) on physical notices mailed to potential class members, allowing for Plaintiff to (1) directly initiate communication with Plaintiffs' counsel, and/or (2) download, sign, and submit the Notice of Pendency form electronically if they so choose").) Plaintiff also seeks "authorization for the publication of the full opt-in notice on Plaintiffs' counsel's website," to use Defendants' logo, and to post the notice at "conspicuous locations [at] Defendants' locations," including "in the employees' pay envelopes or other method of delivery of their paycheck information." (*Id.* at 21–22.) For the reasons set forth, the Court grants some — but not all — of these requests.

First, the Court agrees that dissemination of the notice by mail, email, text message, and social media is appropriate. *See, e.g.*, *Panora v. Deenora Corp.*, No. 19-CV-7267 (BMC), 2020 WL 7246439, at *5 (E.D.N.Y. Dec. 9, 2020) ("The COVID-19 public health crisis favors some form of electronic dissemination."). Similarly, posting the notice at Defendants' physical locations is a generally acceptable form of distributing information related to such notices, and is therefore approved. *Ni*, 2020 WL 7078533, at *12 ("Courts in the Second Circuit 'regularly approve plaintiffs' requests to post notices and consent forms in 'non-public areas' where potential collective members are likely to congregate, such as clock-in stations or break rooms.'" (quoting *Castillo v. Perfume Worldwide Inc.*, No. 17-CV-2972 (JS) (AKT), 2018 WL 1581975, at *17 (E.D.N.Y. Mar. 30, 2018))).

However, the Court does not grant Plaintiff's requests to add QR codes, to use Defendants' logo, to post the notice on Plaintiff's counsel's website, or to distribute the notice through Defendants' pay envelopes. Simply put, the Court is not persuaded that such means are necessary, and shares many of the concerns expressed by other courts in the Second Circuit in response to such requests. *See Panora v. Deenora Corp*, 521 F. Supp. 3d 177, 180 (E.D.N.Y. 2021) (strongly disapproving of plaintiff counsel's use of defendants' logo and QR codes); *Yi Mei Ke*, 2021 WL 148751, at *15 (denying plaintiff's counsel's request to include notice of pendency in defendants' employees pay envelopes because doing so "may suggest either that the notice originates with the employer or that filling it out may actually be required or expected by the employer"); *Chui*, 2020 WL 3618892, at *10 (denying request to post notice on plaintiff's counsel's website where plaintiff had not provided any justification for doing so). Accordingly, these aspects of Plaintiff's proposal for disseminating the Notice of Pendency are denied.

Furthermore, because "[t]he common practice in the Eastern District is to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiffs' counsel," the Court adopts this measure here as well. *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 462 (E.D.N.Y. 2014); *see also Jing Fang Luo*, 2016 WL 11263668, at *15 (collecting cases). Thus, the Notice of Pendency must state that potential opt-in plaintiffs should file their consent forms with the Clerk of the Court.[13]

\* \* \* \* \*

The Court approves the contents of the proposed Notice of Pendency form, save for the issues described above. Once Plaintiff has edited the form to reflect the requirements above, Plaintiff shall serve a draft on Defendants by **November 19, 2021**, and by **December 3, 2021**, Defendants shall serve any objections or give their consent. By **December 17, 2021**, the parties shall file a joint motion for Court approval, which must include the final version of the Notice of Pendency form. Upon the Court's approval of the final version, Plaintiff shall distribute the Notice of Pendency form within two weeks. Finally, all opt-in consent forms must be filed with the Clerk of the Court, as described above, within sixty (60) days from the date the Court approves the final Notice of Pendency form.

      viii.  *Reminder Notice*

Further, "Plaintiff requests that this Court order that Plaintiffs may send a reminder mailing and email to all unresponsive collective action members half-way through the notice period," i.e., thirty (30) days following final approval of the notices, which Defendants do not oppose. (Pl.'s Mem., ECF No. 44, at 22.) The Court authorizes

---

[13] This method will still enable Plaintiff's counsel to receive notice of opt-in plaintiffs' joining in the lawsuit, as filing with the Clerk of the Court will "cause the Consents to be docketed into the ECF system and thus served on all counsel of record." *See Lujan v. Cabana Mgmt.*, No. 10-CV-755 (ILG), 2011 WL 317984, at *13–14 (E.D.N.Y. Feb. 1, 2011).

Plaintiff to send one reminder notice by mail and email prior to the expiration of the opt-in period in order to alert potential plaintiffs of the upcoming deadline. *See Ni*, 2020 WL 7078533, at *13; *Han*, 2021 WL 3774186, at *14.

ix.   *Production of Identifying Information*

Finally, Plaintiff requests that the Court order Defendants, within fifteen days of this Order, to "furnish to Plaintiff's counsel a Microsoft Excel spreadsheet containing for each current and former non-exempt and non-managerial employee employed at any time from June 20, 2017" to the present, including specific biographical information. (Proposed Order, ECF No. 43-3.) Defendants do not object to production of this information. Defendants are therefore ordered to produce the requested information — narrowed in scope consistent with this opinion to "current and former non-exempt and non-managerial drivers employed at any time from June 20, 2017" — within fifteen (15) days of entry of this Order. *See Panora*, 2020 WL 7246439, at *4.

## III.   Plaintiff's Discovery Motions

On September 24, 2021, and October 5, 2021, respectively, Plaintiff filed a motion for an extension of time to complete discovery and a motion to compel. (*See* Pl.'s Disc. Mot., ECF No. 63; Pl.'s Mot. to Compel, ECF No. 66.) On September 28, 2021, and October 11, 2021, Defendants filed their opposition to Plaintiff's discovery motions. (*See* Defs.' Reply in Opp'n to Pl.'s Disc. Mot., ECF No. 65; Defs.' Reply in Opp'n to Pl.'s Mot. to Compel, ECF No. 67.) As the parties point out, discovery has been closed since June 30, 2021. (*See* Feb. 1, 2021 ECF Minute Entry.) Nevertheless, the parties have continued to engage in discovery, at least until August 12, 2021, when Defendant Sheng Bo Dong's deposition began. (*See* Aug. 12, 2021 ECF Minute Entry.)

Plaintiff now requests that discovery be reopened "within 2 months of the approval of the pending motion for conditional collective certification or 3 months after

the opt-ins period end, whichever the case may be." (Pl.'s Disc. Mot., ECF No. 63.) Plaintiff also requests that Defendant Sheng Bo Dong and the other Defendants "submit to depositions on court-ordered dates." (Pl.'s Mot. to Compel, ECF No. 66.)

Defendants object to reopening discovery on the grounds that "1) Plaintiff failed to act diligently in conducting discovery, [and] 2) re-opening discovery will prejudice the Defendants," and also because "good cause" has not been shown by Plaintiff. (Defs.' Reply in Opp'n to Pl.'s Disc. Mot., ECF No. 65, at 2; *see also* Defs.' Reply in Opp'n to Pl.'s Mot. to Compel, ECF No. 67.) Defendants further contend that paper discovery is complete and that Plaintiff "effectively abandoned their notice of depositions." (Defs.' Reply in Opp'n to Pl.'s Disc. Mot., ECF No. 65, at 3.)

The Court is mindful of the unsatisfactory pace of discovery over the past several months. However, given the Court's partial grant of Plaintiff's motion for conditional certification, and in light of the fact that at least one Defendant began his virtual deposition as recently as August 12, 2021, which deposition could not be completed because the device he was using for his virtual deposition failed mid-way through it, the Court finds that reopening discovery for a limited window is appropriate in an exercise of discretion. Accordingly, Plaintiff's two discovery motions are GRANTED in part and DENIED in part. Discovery will be reopened for ninety (90) days following the Court's final approval of the Notice of Pendency, in order for the parties to complete any outstanding documentary discovery and depositions. Furthermore, the parties are directed to meet and confer to set a deposition schedule within thirty (30) days of the Court's final approval of the Notice of Pendency.

## CONCLUSION

For the reasons set forth above, Plaintiff's second motion for conditional certification as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) (*see* Pl.'s Second Mot., ECF No. 42) is GRANTED in part and DENIED in part, subject to the limitations discussed in this Memorandum and Order.

The Court further orders that:

(1) within fourteen (14) days of this Order, by **November 19, 2021**, the parties are to meet and confer in good faith, and by **December 17, 2021**, the parties shall submit a revised proposed Notice of Pendency form that complies with the directives set forth herein;

(2) within fifteen (15) days of this Order, by **November 22, 2021**, Defendants are to produce to Plaintiff a spreadsheet including the full names, last known mailing addresses (including apartment number if applicable), telephone numbers, email addresses, social media, and dates of employment of the members of the putative collective, i.e., drivers employed by Defendants JD Produce and JD Trucking at any time from June 20, 2017 to the present;

(3) within thirty (30) days of final approval by the Court, Plaintiff or his designated representative shall cause a copy of the Notice of Pendency form to be disseminated to the putative collective and to be posted at JD Produce Maspeth LLC, located at 57-45 Rust St., Maspeth, New York 11378, and JD Trucking Maspeth Inc., 39-18 216th St., Bayside, New York, 11361;

(4) no sooner than thirty (30) days following final approval by the Court, Plaintiff may send one reminder notice by mail and email to notify potential opt-in plaintiffs that the sixty (60) day opt-in period is coming to a close;

(5) the statute of limitations period for opt-in plaintiffs shall be tolled from June 28, 2021, the date Plaintiff filed his second conditional certification motion, until the close of the opt-in period, sixty (60) days from the Court's final approval of the revised Notice of Pendency; and

(6) within thirty (30) days of the Court's final approval of the Notice of Pendency, the parties are to meet and confer in good faith, and set out a deposition schedule for the ninety-day discovery period granted herein.

**SO ORDERED.**

Dated:   Brooklyn, New York
         November 5, 2021

_____
*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE